Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff and Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNG KIM, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>ALLAKOS INC., ROBERT ALEXANDER, LEO REDMOND, HENRIK RASMUSSEN, and ADAM TOMASI,<br>,<br><br>        Defendants. | Case No: 4:20-cv-01720-JSW<br><br>CLASS ACTION<br><br>**[PROPOSED] ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>JUDGE:   Hon. Jeffrey S. White<br>DATE:    September 30, 2022<br>TIME:    9 a.m.<br>CTRM:    5, 2nd floor |

Defendants have moved to dismiss Plaintiffs' Second Amended Class Action Complaint (the "SAC") for Violation of the Federal Securities Law (the "Motion"). After considering the Motion, Plaintiffs' Opposition, Defendants' Reply in support of the Motion, all other papers on file herein, and oral argument, the Court denies the Motion.

On a Rule 12(b)(6) motion to dismiss, "[t]he Court's 'inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff.'" *In re Zynga Inc. Sec. Litig.*, No. C 12-04007 JSW, 2015 WL 1382217, at *1 (N.D. Cal. Mar. 25, 2015) (White, J.) (quoting *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir.2008)).

## A.  Plaintiffs Allege Falsity.

"A statement or omission is misleading in the securities fraud context if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011). Plaintiffs allege that Defendant Adam Tomasi ("Tomasi") misleadingly told investors that Phase 2 and Phase 3 trials of AK002 in eosinophilic gastritis ("EG") and/or eosinophilic duodenitis ("EoD") patients ("Phase 2" and "Phase 3," and, collectively, the "ENIGMA Trials") had "very similar" and "identical" patient populations during a September 10, 2021 interview (the "Interview"). Specifically, Tomasi stated: (1) "[s]o we do have a very similar patient population in phase 3 as we do in phase 2"  and (2) "[t]he Phase 3 study is identical with regards to [the] patient population that we're [enrolling]."

Defendants' argue that Tomasi's statement that "[s]o we do have a very similar patient population in phase 3 as we do in phase 2" was not misleading because it "merely summarizes" Tomasi's "immediately preceding sentences," but the immediately preceding sentences are themselves misleading because Allakos did not have "the same type of demographics going into the phase 3 study." As Allakos admitted, there were dramatic differences in previous diagnosis with  EG and/or EoD, Irritable Bowel Syndrome ("IBS"), and Eosinophilic Esophagitis ("EoE") and with the level of tissue and blood eosinophils and serum immunoglobulin ("IgE") between the patients in Phase 2 and Phase 3. Furthermore, to the extent that Tomasi's statements are

- 1 -

ambiguous, they must a construed in favor of Plaintiffs on a motion to dismiss. *See Edenbrook Capital, LLC v. RhythmOne Plc,* No. 19-CV-00615-WHO, 2019 WL 1791419, at *7 (N.D. Cal. Apr. 24, 2019) (denying motion to dismiss where "[defendant's] interpretation of its statements is plausible," but "not the only" interpretation).

Additionally, regardless of whether the preceding sentences were misleading, Tomasi's statement "[s]o we do have a very similar patient population" was still misleading because it gave a reasonable investor impression of a state of affairs that differs from the one that actually exists. In context, that statement touted to investors that they did not have to worry about whether the patient populations of Phase 2 and Phase 3 were different, something that Tomasi twice said was the "most important thing." *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) ("once defendants chose to tout the company's backlog, they were bound to do so in a manner that wouldn't mislead investors as to what that backlog consisted of").

Tomasi's statement that "[t]he Phase 3 study is identical with regards to [the] patient population that we're [enrolling]" is also misleading in context. Defendants argue that Tomasi was only speaking about Phase 2 and 3's enrollment criteria, but, given that Allakos announced Phase 3's enrollment criteria long ago and Tomasi indicated he knew the actual makeup of the patient population, a reasonable investor would have found it misleading for him to say that "patient population that we're [enrolling]" is "identical" if the actual patients enrolled were not.

Plaintiffs claims are also not "fraud-by-hindsight" given that courts apply an "objective standard…to determine whether a statement is misleading," *see In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021), and at the time Tomasi made the statements the demographics and characteristics of Phase 3's patients were significantly different than Phase 2's. Plaintiffs' claims are also not a criticism of Phase 3's design because Tomasi, however, made clear that his statements went beyond the methodology of the ENIGMA Trials.

### B. Plaintiffs Allege Scienter.

A securities plaintiff may plead scienter by pleading "knowledge of the falsity as well as 'deliberate or conscious recklessness.'" *Mulderrig v. Amyris, Inc.*, No. 19-CV-1765 YGR, 2020

- 2 -

WL 5903844, at *8 (N.D. Cal. Oct. 5, 2020) (quoting *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 937 (9th Cir. 2003)). An inference of scienter is strong "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

"It is not necessary…to establish a strong inference that defendants actually knew contradicting facts since '[r]ecklessly turning a 'blind eye' to impropriety is equally culpable …under Rule 10(b)-5.'" *Mulderrig*, 492 F. Supp. 3d at 1013 (quoting *In re Verifone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012)). The SAC pleads Tomasi was reckless.

*First*, Tomasi demonstrated that he was very knowledgeable about the ENIGMA Trials and the Prevalence Study during the Interview where he made his misstatements. *See In re Zillow Grp., Inc. Sec. Litig.,* No. C17-1387-JCC, 2019 WL 1755293, at *20 (W.D. Wash. Apr. 19, 2019) (defendants were reckless where they "made numerous statements displaying their familiarity with how the co-marketing program was designed and operated"). *Second*, Tomasi was tipped off by the Prevalence Study results that the demographics and characteristics of patients could be significantly different despite meeting the enrollment criteria of the ENIGMA Trials, and the Prevalence Study identified the precise differences that caused Phase 3 to fail. *Third*, Tomasi's statements during the Interview made clear that he had access to the demographics and characteristics of the Phase 3 patients and that he reviewed them. The SAC also alleges that having access to patient characteristics after a trial was fully enrolled (but not completed) was standard at Allakos. Access to information showing that the statements were misleading strongly supports an inference of recklessness. *See In re Finisar Corp. Sec. Litig.*, No. 5:11-CV-01252-EJD, 2017 WL 1549485, at *6-*7 (N.D. Cal. May 1, 2017) (scienter pled based on access to information). *Fourth*, Tomasi understood that the demographics and characteristics of the Phase 3 patients were very important, touting it to investors as the "most important" thing twice in the Interview despite the fact the patient population was actually significantly different. See *Schueneman v. Arena Pharms.*, Inc., 840 F.3d 698, 707-708 (9th Cir. 2016) (defendant was "free to express confidence in FDA approval," but could not claim "that

[PROPOSED] ORDER DENYING DEFENDANTS' MTD SAC                CASE NO. 4:20-CV-01720-JSW

all of the data was running in lorcaserin's favor").

Contrary to Defendants' argument, Tomasi had strong motivation to downplay, not amplify, the differences between the Phase 2 and Phase 3 populations. It is clear that during the Interview Tomasi was attempting to make investors believe that Phase 3 would be successful and claiming that the patient populations were the same was one of the most important ways that he did that. Additionally, amplifying the differences would have also implied that more research was needed to determine if the type of patients identified in the Prevalence Study were good candidates for AK002.

Finally, Defendants argue that Plaintiffs' claims lack logic because the SAC alleges that Tomasi knew Phase 3 was "doomed to fail." The SAC does not allege that. Instead, it alleges that Tomasi recklessly understated how much risk there was that Phase 3 would not succeed, which is actionable. *See In re Amylin Pharm., Inc. Sec. Litig.*, No. 01CV1455 BTM (NLS), 2003 WL 21500525, at *5 (S.D. Cal. May 1, 2003) ("[I]f, as Plaintiffs allege, Defendants misled Plaintiffs about…risk by making assurances regarding the completeness of the data…, Defendants may be held liable.").

**C.  Conclusion**

For the foregoing reasons, it is HEREBY ORDERED that Defendants' motion to dismiss is DENIED.

**IT IS SO ORDERED.**

DATED this _____ day of _____ 2022.

_____
Hon. Jeffrey S. White
UNITED STATES DISTRICT JUDGE

- 4 -
[PROPOSED] ORDER DENYING DEFENDANTS' MTD SAC                    CASE NO. 4:20-CV-01720-JSW