Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNG KIM, Individually and on behalf of all others similarly situated, | Case No: 4:20-cv-01720-JSW |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ADMINISTRATIVE RELIEF FOR PERMISSION TO FILE A SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| ALLAKOS INC., ROBERT ALEXANDER, LEO REDMOND, HENRIK RASMUSSEN, and ADAM TOMASI, | |
| Defendants. | |

JUDGE:    Hon. Jeffrey S. White
DATE:     Motion to Dismiss noticed for
          September 30, 2022, continued
          to October 14, 2022
TIME:     9 a.m.
CTRM:     5, 2nd floor

PLAINTIFFS MOT. FOR ADMIN RELIEF TO FILE SUR-REPLY                CASE NO. 4:20-CV-01720-JSW

## NOTICE OF MOTION AND MOTION FOR ADMINISTRATIVE RELIEF

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Points and Authorities, the Declaration of Brian B. Alexander, dated September 16, 2022, and all other papers filed in the above-captioned action, Lead Plaintiff Sung Kim and Named Plaintiffs Christian Mayo and Allison Skye ("Plaintiffs") move pursuant to Local Rule 7-11 for permission to file the Sur-reply in Further Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, which is attached to this Motion as Exhibit 1.

## MEMORANDUM OF POINTS AND AUTHORITIES

In their Reply Memorandum in Further Support of Their Motion to Dismiss Second Amended Complaint (ECF No. 50, "Reply"), Defendants argued for the first time that the Plaintiffs' Second Amended Complaint (ECF No. 41, "SAC") did not plead falsity and scienter because investors knew that the Phase 3[1] population likely had lower eosinophil levels and different diagnostic history because, *inter alia*, Allakos publicly disclosed the results of the Prevalence Study. Because this argument in the Reply was completely new, Defendants submitted new evidence to support it, and there is no reason why Defendants could not have made the argument earlier, Plaintiffs respectfully request that the Court allow them to respond by granting them permission to file the proposed sur-reply attached as Exhibit 1 to this Motion. Plaintiffs' proposed sur-reply argues both that Defendants have waived their new argument[2] by making it for the first time in reply and also responds the Defendants' new argument substantively.

## PROCEDURAL HISTORY

Plaintiffs filed their SAC on April 29, 2022. On June 13, 2022, Defendants filed their Motion to Dismiss the SAC (ECF No. 46, "Opening Brief"). Plaintiffs filed their Opposition on July 28, 2022 and Defendants filed their Reply on August 29, 2022. On September 1, 2022, Plaintiffs' counsel emailed Defendants' counsel, stating that he was on vacation this week and asking whether Defendants' counsel was available to meet and confer next week about whether

---

[1] This brief incorporates the definitions from Plaintiffs' Opposition to Defendants' Motion to Dismiss the SAC (ECF No. 49, "Opposition").

[2] *See Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]s an argument raised for the first time in a *reply* brief, it is not an argument that we may consider here" (emphasis in original)).

PLAINTIFFS MOT. FOR ADMIN RELIEF TO FILE SUR-REPLY   CASE NO. 4:20-CV-01720-JSW

Defendants would agree to stipulate that Plaintiffs may file a sur-reply addressing Defendants' new reply argument that investors knew that the Phase 3 population likely had lower eosinophil levels and different diagnostic history. Declaration of Brian B. Alexander in Support of Plaintiffs' Motion For Administrative Relief For Permission to File Sur-Reply, dated September 16, 2022 ("Alexander Decl.") ¶2. Defendants' counsel responded on September 2, 2022 that he was available to meet and confer on Thursday or Friday of the next week (September 8 and 9, 2022). *Id.* ¶3. The Parties met and conferred on Friday, September 9, 2022. *Id.* ¶4. During the meet and confer, Defendants' counsel told Plaintiffs' counsel that although Defendants were generally opposed to agreeing to a sur-reply, they might consider stipulating to one if Plaintiffs also agreed to an additional submission from Defendants, either separately or jointly with Plaintiffs. *Id.* Plaintiffs' counsel told Defendants' counsel that Plaintiffs would consider their position. *Id.* On September 14, 2022, Plaintiffs' counsel informed Defendants' counsel that Plaintiffs would not agree to a third brief by Defendants as a condition of Defendants stipulating to a sur-reply for Plaintiffs. *Id.* ¶5. The Parties' counsel then agreed that Defendants would inform Plaintiffs of their position the next day. *Id.* Defendants' counsel informed Plaintiffs' counsel that Defendants opposed this motion on September 15, 2022. *Id.* ¶6.

## ARGUMENT

When a party raises an argument for the first time in its reply brief, courts in this District grant leave to the opposing party to file a sur-reply so that it has a fair chance to respond. *Brown v. Wal-Mart Store, Inc.*, No. 5:09-CV-03339-EJD, 2021 WL 51713, at *1 (N.D. Cal. Jan. 6, 2021) ("The Court agrees…that the reply presents new evidence and argument, and therefore grants Walmart's administrative motion [for leave to file a sur-reply]"); *Tanious v. Gattoni*, 533 F. Supp. 3d 770, 774 (N.D. Cal. 2021) (White, J.) (granting parties' motion to file sur-reply responding to new argument); *Kazda v. Aetna Life Ins. Co.*, No. 19-CV-02512-WHO, 2019 WL 6716306, at *4 n.1 (N.D. Cal. Dec. 10, 2019) (granting sur-reply where party did not have opportunity to respond to new argument and evidence raised for the first time in reply brief). Here, in challenging falsity, Defendants raised an entirely new argument in their Reply under the heading: "Investors Knew that the Phase 3 Population Likely Had Lower Eosinophil Levels and Different Diagnostic

- 2 -

History" and also made a similar new argument in the scienter section of their Reply. Reply at 6-8, 13. Furthermore, as explained below, there is no doubt Defendants could have raised their new argument in their Opening Brief, but they failed to do so.

The SAC alleges that Defendant Tomasi's statements that the Phase 2 and Phase 3 ENIGMA patient populations were "very similar" and "identical" were false and misleading because those patient populations were materially different in both diagnostic history and in baseline eosinophil and IgE levels. SAC ¶¶148-151. The SAC further alleges that Tomasi behaved intentionally or recklessly when he made his misstatements because he was put on notice of the prospect that the Phase 3 patient population was different from the Phase 2 patient population because of the differences between the patients enrolled in Phase 2 and those identified in the Prevalence Study. *Id.* ¶172. To support that point, the SAC discussed Allakos' October 26, 2020 Conference Call on the Prevalence Study's results extensively, including alleging that Allakos' Senior Director of Medical Affairs and Clinical Development Amol Kamboj stated during the conference call that "the patients who were identified as having EG and/or EGE/EoD in the Prevalence Study had peripheral eosinophils 'notably lower' than the patients who were identified for Phase 2 ENIGMA" and that Kamboj presented a slide that was also attached to a 8-K filed with the SEC, which the SAC describes as stating that "the median peripheral blood eosinophils count for patients identified for Phase 2 ENIGMA was almost double that of the Prevalence Study patients" and that "55% of the Prevalence Study EG and/or EGE/EoD patients had a previous diagnosis of IBS whereas only 4% of the Phase 2 ENIGMA patients did." *Id.* ¶¶95-101, 172. The SAC also contained allegations describing Allakos' March 24, 2020 Conference Call. *Id.* ¶¶ 90-94.

Despite what the SAC pled, Defendants' Opening Brief did not in any way argue that investors knew that the Phase 3 population likely had lower eosinophil levels and different diagnostic history or that Tomasi did not make his misrepresentations with scienter because the results of the Prevalence Study were publicly disclosed to investors. Instead, Defendants argued that Tomasi's statements were not misleading in context because the Phase 2 and Phase 3 trials had the same enrollment criteria and were similar with respect to Total Symptom Scores ("TSS")

PLAINTIFFS MOT. FOR ADMIN RELIEF TO FILE SUR-REPLY          CASE NO. 4:20-CV-01720-JSW

and that Plaintiffs' claim is a hindsight driven criticism of Allakos' study design. Opening Brief at 8-10. Additionally, when arguing that Defendant Tomasi did not act with scienter, Defendants argued (1) that the SAC had not sufficiently pled that Defendant Tomasi knew or should have known the differences between the Phase 2 and Phase 3 patient populations in baseline eosinophil and IgE levels and diagnostic history at the time he made his misstatements and (2) that the Prevalence Study could not have put Tomasi on notice about those differences. *Id.* at 12-13, 15. This is precisely the opposite of what they would later argue in their Reply brief.

In their Opposition, Plaintiffs responded that Tomasi's statements were misleading because, based on the context, a reasonable investor would have interpreted them as about more than just TSS and the enrollment criteria. Opposition at 7-10. Plaintiffs' Opposition also reiterated the allegations from the SAC that Tomasi's misstatements were intentional or reckless because he was put on notice of the prospect of significant differences between the patient populations of Phase 2 and Phase 3 by the results of the Prevalence Study. *Id.* at 11-12.

In the Reply, Defendants made a complete about-face. In challenging falsity, Defendants raised an entirely new argument under the heading: "Investors Knew that the Phase 3 Population Likely Had Lower Eosinophil Levels and Different Diagnostic History." Reply at 6-8. They argued for the first time that "Plaintiffs' argument still fails because ***investors were fully aware of the risk Mr. Tomasi allegedly failed to disclose***." *Id.* at 6-7 (emphasis in original). In support of that new argument, Defendants' introduced their Exhibits F and G, which are copies of transcripts of the conference calls that Allakos held on March 24, 2020 and October 26, 2020, for the first time, despite the fact that the SAC had relied on them extensively. *Id.* at 8; SAC ¶¶90-101. Defendants also cited to and reproduced a slide from the October 26, 2020 Conference Call that was attached to and discussed extensively in the SAC. Reply at 7. Similarly, in the section of the Reply entitled "Plaintiffs Fail to Plead Recklessness," they argued for the first time that Tomasi did not make his misrepresentations with scienter because "the results of the Prevalence Study were ***publicly disclosed to investors***." *Id.* at 13 (emphasis in original).

Accordingly, Defendants went from arguing there was no reason that Tomasi, Allakos' President and Chief Operating Officer, should have known that the Phase 3 population had lower

PLAINTIFFS MOT. FOR ADMIN RELIEF TO FILE SUR-REPLY        CASE NO. 4:20-CV-01720-JSW

eosinophil levels and different diagnostic history than the Phase 2 population in their Opening Brief to arguing that ***Allakos' investors knew about those differences in their Reply***. *Compare* Opening Brief at 12-13, 15 *with* Reply at 6-8, 13. Defendants attempted to shoehorn their new argument into the Reply by trying to relate it to the earlier briefing on what Tomasi's statement meant in context (Reply at 6), but, as discussed in Plaintiffs' proposed sur-reply, Defendant argument is actually a "truth on the market" argument. Regardless of how Defendants label their argument, it was clearly new since there was no indication at all in Defendants' Opening Brief that it was their position that Allakos' investors knew about the differences between the Phase 3 and Phase 2 patient population. Furthermore, given the allegations in the SAC and the fact it relied extensively on Allakos' October 26, 2020 and March 14, 2020 Conference Calls, Defendants certainly could have and should have made this argument in their Opening Brief.

Given that Defendants' argument is completely new in their Reply and there is no reason that they could not have made it in their Opening Brief, fairness dictates that the Court allow Defendants the opportunity to respond to it. Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs permission to file the sur-reply attached to this motion as Exhibit 1, which solely addresses Defendants' new argument.

DATED: September 16, 2022

**THE ROSEN LAW FIRM, P.A.**

By: /s/*Laurence M. Rosen*
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Brian B. Alexander, Esq. (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: balexander@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

PLAINTIFFS MOT. FOR ADMIN RELIEF TO FILE SUR-REPLY          CASE NO. 4:20-CV-01720-JSW