# Exhibit 1

Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNG KIM, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>ALLAKOS INC., ROBERT ALEXANDER, LEO REDMOND, HENRIK RASMUSSEN, and ADAM TOMASI,<br><br>        Defendants. | Case No: 4:20-cv-01720-JSW<br><br>CLASS ACTION<br><br>**PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>JUDGE:    Hon. Jeffrey S. White<br>DATE:     Noticed for September 30, 2022, continued to October 14, 2022<br>TIME:     9 a.m.<br>CTRM:    5, 2nd floor |

Lead Plaintiff Sung Kim and Named Plaintiffs Christian Mayo and Allison Skye ("Plaintiffs") respectfully submit this sur-reply in further support of their Opposition to Defendants' Motion to Dismiss the Second Amended Complaint.

## **INTRODUCTION**

For the first time in their Reply Memorandum in Further Support of Their Motion to Dismiss Second Amended Complaint (ECF No. 50, "Reply"), Defendants argued that the Plaintiffs' Second Amended Complaint (ECF No. 41, "SAC") did not plead falsity and scienter because investors knew that the Phase 3[1] population likely had lower eosinophil levels and different diagnostic history because, *inter alia*, Allakos publicly disclosed the results of the Prevalence Study. As an initial mater, Defendants waived this argument because they raised it for the first time in Reply even though they could have raised it earlier. In fact, in Defendants' Motion to Dismiss SAC (ECF No. 46, "Opening Brief"), they argued the opposite — that the SAC had not sufficiently plead that Defendant Tomasi, despite being President and Chief Operating Officer ("COO") of Allakos, was not on notice of the possibility of those differences. Accordingly, the Court should not consider Defendants' new argument.

Even if the Court does consider Defendants' new argument, their hasty change of position does not help them. *Regarding falsity*, Defendants' argument that investors could not have been misled by Tomasi's comments because the risk was fully disclosed is a truth-on-the-market defense, although they do not label it as such. Their argument fails because the truth-on-the-market defense is not available at the pleading stage. Furthermore, even if it were available, Defendants do not come close to showing that the information was transmitted to the market with the level of intensity necessary for the Court to hold that it balanced out Tomasi's misrepresentations as a matter of law. *Regarding Scienter*, Defendants' new argument actually bolsters the SAC's allegations. In their Opening Brief, Defendants argued that the SAC did not sufficiently plead that Tomasi had knowledge of the differences in the demographics and characteristics of Phase 2 and Phase 3 patients, but now their Reply has conceded that point.

---

[1] This brief incorporates the definitions from Plaintiffs' Opposition to Defendants' Motion to Dismiss the SAC (ECF No. 49, "Opposition").

PLAINTIFFS' SUR-REPLY IN OPP. TO MTD SAC                    CASE NO. 4:20-CV-01720-JSW

## ARGUMENT

**A. Defendants Waived Their Argument that Investors Knew that the Phase 3 Population Likely Had Lower Eosinophil Levels and Different Diagnostic History.**

It is well established in the Ninth Circuit that a party waives an argument when it raises it for the first time in a reply brief. *See Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]s an argument raised for the first time in a *reply* brief, it is not an argument that we may consider here" (emphasis in original)); *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").

The SAC alleges that Defendant Tomasi's statements that the Phase 2 and Phase 3 ENIGMA patient populations were "very similar" and "identical" were false and misleading because those patient populations were materially different in both diagnostic history and in baseline eosinophil and IgE levels. SAC ¶¶148-151. The SAC further alleges that Tomasi behaved intentionally or recklessly when he made his misstatements because he was put on notice of the prospect that the Phase 3 patient population was different from the Phase 2 patient population because of the differences between the patients enrolled in Phase 2 and those identified in the Prevalence Study. *Id.* ¶172. To support that point, the SAC discussed Allakos' October 26, 2020 Conference Call on the Prevalence Study's results extensively, including alleging that Allakos' Senior Director of Medical Affairs and Clinical Development Amol Kamboj stated during the conference call that "the patients who were identified as having EG and/or EGE/EoD in the Prevalence Study had peripheral eosinophils 'notably lower' than the patients who were identified for Phase 2 ENIGMA" and that Kamboj presented a slide that was also attached to a 8-K filed with the SEC, which the SAC describes as stating that "the median peripheral blood eosinophils count for patients identified for Phase 2 ENIGMA was almost double that of the Prevalence Study patients" and that "55% of the Prevalence Study EG and/or EGE/EoD patients had a previous diagnosis of IBS whereas only 4% of the Phase 2 ENIGMA patients did." *Id.* ¶¶95-101, 172. The SAC also contained allegations describing Allakos' March 24, 2020 Conference Call. *Id.* ¶¶ 90-94.

Despite what the SAC pled, Defendants' Opening Brief did not in any way argue that

investors knew that the Phase 3 population likely had lower eosinophil levels and different diagnostic history or that Tomasi did not make his misrepresentations with scienter because the results of the Prevalence Study were publicly disclosed to investors. Instead, Defendants argued that Tomasi's statements were not misleading in context because the Phase 2 and Phase 3 trials had the same enrollment criteria and were similar with respect to Total Symptom Scores ("TSS") and that Plaintiffs' claim is a hindsight driven criticism of Allakos' study design. Opening Brief at 8-10. Additionally, in their Opening Brief when arguing that Defendant Tomasi did not act with scienter, Defendants argued (1) that the SAC had not sufficiently pled that Defendant Tomasi knew or should have known the differences between the Phase 2 and Phase 3 patient populations in baseline eosinophil and IgE levels and diagnostic history at the time he made his misstatements and (2) that the Prevalence Study could not have put Tomasi on notice about those differences. *Id.* at 12-13, 15. This is precisely the opposite of what they would later argue in their Reply brief.

In their Opposition, Plaintiffs responded that Tomasi's statements were misleading because, based on the context, a reasonable investor would have interpreted them as about more than TSS and the enrollment criteria. Opposition at 7-10. Plaintiffs' Opposition also reiterated the allegations from the SAC that Tomasi's misstatements were intentional or reckless because he was put on notice of the prospect of significant differences between the patient populations of Phase 2 and Phase 3 by the results of the Prevalence Study. *Id.* at 11-12.

In the Reply, Defendants made a complete about-face. In challenging falsity, Defendants raised an entirely new argument under the heading: "Investors Knew that the Phase 3 Population Likely Had Lower Eosinophil Levels and Different Diagnostic History." Reply at 6-8. They argued for the first time that "Plaintiffs' argument still fails because ***investors were fully aware of the risk Mr. Tomasi allegedly failed to disclose***." *Id.* at 6-7 (emphasis in original). In support of that new argument Defendants' introduced their Exhibits F and G, which are copies of transcripts of the conference calls that Allakos held on March 24, 2020 and October 26, 2020, for the first time, despite the fact that the SAC had relied on them extensively. *Id.* at 8; SAC ¶¶90-101. Defendants also cited to and reproduced a slide from the October 26, 2020 Conference Call that was attached to and discussed extensively in the SAC. Reply at 7. Similarly, in the section of the Reply entitled

- 3 -

"Plaintiffs Fail to Plead Recklessness," they argued for the first time that Tomasi did not make his misrepresentations with scienter because "the results of the Prevalence Study were ***publicly disclosed to investors***." *Id.* at 13 (emphasis in original).

Accordingly, Defendants went from arguing there was no reason that Tomasi, Allakos' President and Chief Operating Officer ("COO"), should have known that the Phase 3 population had lower eosinophil levels and different diagnostic history than the Phase 2 population in their Opening Brief to arguing that ***Allakos' investors knew about those differences in their Reply***. *Compare* Opening Brief at 12-13, 15 *with* Reply at 6-8, 13. Defendants attempted to shoehorn their new argument into the Reply by trying to relate it to the earlier briefing on what Tomasi's statement meant in context (Reply at 6), but, as discussed below, Defendant argument is actually a "truth on the market" argument. Regardless of how Defendants label their argument, it was clearly new since there was not even a hint in their Opening Brief that it was Defendants' position that Allakos' investors knew about the differences between the Phase 3 and Phase 2 patient populations. Furthermore, given the allegations in the SAC and the fact it relied extensively on Allakos' October 26, 2020 and March 14, 2020 Conference Calls, Defendants certainly could have and should have made this argument in their Opening Brief. The Court should not tolerate a complete disregard of such well-established briefing rules that are essential to judicial economy and fairness and should, therefore, hold that Defendant waived their new argument. *See California Sportfishing Prot. All. v. Pac. States Indus., Inc.*, No. 15-CV-01482-JD, 2015 WL 5569073, at *2 (N.D. Cal. Sept. 22, 2015) ("Raising new arguments in a reply brief is classic sandbagging, and the Court will not tolerate it."); *Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, No. 18-CV-05031-EMC, 2021 WL 4923328, at *8 (N.D. Cal. July 9, 2021) ("[B]ecause Skyroam did not raise this argument until the reply brief – although it could have been raised in the opening brief – the Court does not consider it.").

## B. Defendants' New Argument Does Not Undermine the SAC's Falsity Allegations.

Although Defendants do not label it as such, Defendants' new argument is based on the "truth-on-the-market" doctrine. The Ninth Circuit describes the truth-on-the-market doctrine as: "[I]f the market has become aware of the allegedly concealed information, the facts allegedly

- 4 -

omitted by the defendant would already be reflected in the stock's price and the market will not be misled." *Provenz v. Miller*, 102 F.3d 1478, 1492 (9th Cir. 1996) (internal quotation marks omitted). This clearly describes Defendants' argument that "Plaintiffs' argument…fails because ***investors were fully aware of the risk Mr. Tomasi allegedly failed to disclose***" and "[a]s a result, no reasonable investor could have been misled by Mr. Tomasi's comment on the similarity between the two population." Reply at 6-8 (emphasis in original).

It is understandable that Defendants did not use the term "truth-on-the-market" despite their argument clearly falling under that defense because that defense is so fact intensive that it is not available at all on a motion to dismiss. *See In re Thoratec Corp. Sec. Litig.,* No. C-04-03168 RMW, 2006 WL 1305226, at *4 (N.D. Cal. May 11, 2006) ("a 'truth-on-the-market' defense is available in principle ... but not at the pleading stage." (internal quotation marks omitted)); *Bos. Ret. Sys. v. Uber Techs.*, Inc., No. 19-CV-06361-RS, 2020 WL 4569846, at *6 (N.D. Cal. Aug. 7, 2020) (holding that the truth-on-the-market defense "is not available at the motion to dismiss stage" because it "is a method of refuting an alleged misrepresentation's materiality" (internal quotation marks omitted)). Furthermore, even on summary judgment, the standard is extreme high: "[T]he defendants must prove that the information that was withheld or misrepresented was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by [the] insider's one-sided representations" and "no rational jury could find that the market was misled." *Provenz*, 102 F.3d at 1492–93 (internal quotation marks omitted).

Even if it were permissible to argue a truth-on-the-market defense on a motion to dismiss, Defendants would not even come close. *First*, Defendants' contention that investors knew that the Phase 3 population likely had lower eosinophil levels and different diagnostic history is ridiculous in light of the fact that they argued in their Opening Brief that Tomasi — Allakos's President and COO — would have been unaware of the differences. Defendants' reversal obviously shows that they have little faith in their initial arguments, but they cannot run away from those earlier assertions.

*Second*, the Defendants are arguing that no reasonable investor could have been misled by

PLAINTIFFS' SUR-REPLY IN OPP. TO MTD SAC                    CASE NO. 4:20-CV-01720-JSW

Tomasi's statements on September 10, 2021 because of statements that Allakos made about complicated scientific concepts during two different conference calls that occurred approximately 18 and 11 months earlier. Given the fact intensive nature of the inquiry into what investors would have understood, it would be improper for the Court to make this finding as a matter of law on a motion to dismiss. *See Nguyen v. Radient Pharms. Corp.*, No. SA CV 11-0406 DOC, 2011 WL 5041959, at *6-*7 (C.D. Cal. Oct. 20, 2011) (rejecting truth-on-the-market argument even though all omitted facts from allegedly misleading press release were in a publicly disclosed collaboration agreement because "the truth-on-the-market defense is intensely fact-specific, so courts rarely dismiss a complaint on this basis").

*Third*, Defendants completely ignore what made Tomasi's statements especially misleading. When Tomasi made his misleading statements, he told investors that he could say that Phase 2 and Phase 3 had "very similar" patient populations because Phase 3 "is fully enrolled now," *indicating that he had reviewed the demographics of the Phase 3 patient population and was reporting what he had learned to investors*. SAC ¶150. Phase 3 did not finish enrolling until June 7, 2021, more than 7 months after the October 26, 2020 Conference Call, and had not even started enrolling at the time of the March 24, 2020 Conference Call, so a definitive statement about the patient population of Phase 3 could not have been made during those calls. *Id.* ¶¶94, 102. Furthermore, since Tomasi was the President and COO of the Company, investors would have justifiably trusted Tomasi's clear assurance that the Phase 2 and Phase 3 patient populations were "very similar" in all ways that mattered.

Accordingly, Defendants' new argument does nothing to undermined Plaintiffs' argument that Tomasi's statements were misleading in context. Opposition at 7-10.[2]

**C. Defendants' New Argument Strongly Supports the SAC's Scienter Allegations.**

Defendants also argue for the first time in the scienter section of their Reply that the SAC fails to plead scienter because the Prevalence Study was publicly disclosed to investors. Reply at 13. This, however, strongly supports Plaintiffs' scienter arguments. In their Opening Brief

---

[2] *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015), which concerns when an omission renders an opinion statement misleading, is inapposite.

PLAINTIFFS' SUR-REPLY IN OPP. TO MTD SAC                    CASE NO. 4:20-CV-01720-JSW

Defendants argued that the SAC did not sufficiently plead that Tomasi had knowledge of the difference in the demographics and characteristics of Phase 2 and Phase 3 patients and that the Prevalence Study did not put him on notice of those differences. Opening Brief at 12-13, 15. Plaintiffs responded "that the results of the Prevalence Study put Tomasi on notice of the exact differences in the Phase 2 and Phase 3 patient populations that caused Phase 3 to fail." Opposition at 12. ***Defendants have now conceded this point***, admitting that the results of Prevalence Study put Tomasi on notice that the Phase 3 population likely had lower eosinophil levels and different diagnostic history. *Id.* at 6-8. Defendants argue that Tomasi's knowledge does not support scienter because the public disclosure of the results of the Prevalence Study put "the investing public on the same footing as management." Reply at 13. The investing public was, however, not on the same footing as Tomasi — unlike the investing public, Tomasi had access to the demographics and characteristics of the patients enrolled in Phase 3. Opposition at 12-13. Furthermore, Tomasi indicated to investors that he had reviewed the demographics of the Phase 3 patients, which, along with Tomasi's position at the Company, lent great credibility to Tomasi's blanket statements that the Phase 2 and Phase 3 patient populations were "very similar" and "identical," regardless of what other information investors had. *See S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1261–62 (W.D. Wash. 2009) (plaintiffs pled scienter where defendant represented she had access to disputed knowledge and reassured investors about risk). Accordingly, for these reasons and the reasons in the Opposition, Tomasi was, at minimum, reckless when he made his misstatements.[3]

DATED: September 16, 2022

**THE ROSEN LAW FIRM, P.A.**

By: /s/*Laurence M. Rosen*
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684

---

[3] *City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1132 (E.D. Wash. 2013), is inapposite because, as discussed above, Allakos' investors were not on equal footing with Tomasi. Additionally, the disclosures to investors were contemporaneous with the misstatements in *City of Roseville*, which is not the case here. *Id.*

PLAINTIFFS' SUR-REPLY IN OPP. TO MTD SAC                    CASE NO. 4:20-CV-01720-JSW

Email: lrosen@rosenlegal.com

Brian B. Alexander, Esq. (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: balexander@rosenlegal.com

*Lead Counsel for Lead Plaintiff*